INTERNATIONAL MORTGAGE AND INVESTMENT CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78741. Promulgated June 18, 1937.

*Clarence Castimore*, *Esq.*, and *Walter R. Schoenberg*, *Esq.*, for the petitioner.

*Hartford Allen*, *Esq.*, for the respondent.

**OPINION.**

Murdock: The Commissioner filed no brief but stated in a memorandum filed at the hearing that he relied upon the cases of *T. W. Henritze*, 28 B. T. A. 1173, and *Wilbur F. Burns*, 30 B. T. A. 163; affd., 85 Fed. (2d) 8; certiorari denied, 299 U. S. 592, in which it was held that restrictions on the sales of stock did not establish the absence of fair market value of the shares. Since the hearing, however, the Supreme Court has decided the case of *Helvering* v. *Tex-Penn Oil Co.*, 300 U. S. 481, in which the Court held that certain shares of stock restricted as to sale had no fair market value, saying: "In the peculiar circumstances of this case, the shares of Transcontinental stock, regard being had to their highly speculative quality and to the terms of a restrictive agreement making a sale thereof impossible, did not have a fair market value, capable of being ascertained with reasonable certainty, when they are acquired by the taxpayers." The petitioner's contention is that the repayments of mortgages received by its agents in Germany from July 13 to the end of the year were not unqualifiedly available and were not constructively received by it for Federal income tax purposes, thus, the excess in marks over the cost of the mortgages in marks was not income received by the petitioner in 1931.

The petitioner in years prior to 1931 took dollars into Germany. The rate of exchange at that time was 4.198 marks to the dollar. It used the money to purchase German mortgages at less than their face value. Some of those mortgages were paid off during the taxable year between July 12 and December 31, and the petitioner's

agents received from the mortgagors more marks than the mortgages had cost the petitioner. Measured in marks, the petitioner had income from its business in Germany, but income for our Federal income tax purposes is measured only in terms of dollars. *James A. Wheatley*, 8 B. T. A. 1246; *North American Mortgage Co.*, 18 B. T. A. 418; *Frederick Vietor & Achelis* v. *Salt's Textile Manufacturing Co.*, 26 Fed. (2d) 249; *New York Life Insurance Co.*, 24 B. T. A. 1217; affd., 65 Fed. (2d) 345; certiorari denied, 290 U. S. 682. The excess of amount realized over cost of the mortgages during that period was not measurable in terms of dollars. None of the marks received by the petitioner's agents representing repayment of mortgage principal could be removed from Germany either physically or by way of credit during the remainder of the taxable year. The dollar equivalent of those marks could not be obtained. The petitioner did not have unrestricted use and enjoyment of the marks. It had a claim against its agents for the amount of the marks but it could not remove the credit or the marks from Germany. It could not use the marks to retire its bonds as it desired to do. Just at the end of the year there was a regulation passed which permitted reinvestment under certain circumstances. But proceeds of such reinvestment would likewise be blocked and the regulation in no way benefited the petitioner during 1931. The petitioner had no way of obtaining these funds during 1931. It tried to have the funds released, but was unable to have any of them released until a number of years later. Thus it appears that these particular marks during 1931 were subject to a very serious restriction and were in no sense the equivalent of free marks. It was, therefore, improper to compute a gain to the petitioner from the repayment of the mortgages by translating the excess marks received into dollars at the rate of exchange applicable to free marks. The petitioner had no gain during 1931 from the receipt of the blocked marks.

The situation in regard to the funds received prior to July 13, representing repayment of mortgages, is entirely different. The marks received in payment of those mortgages were not restricted at the time received, but were freely negotiable, convertible, and transferable. The petitioner could have removed them from Germany had it so desired. The transactions were complete, the gain was actually realized by the taxpayer, and it properly reported that gain. After the gain was realized, some of the marks were apparently allowed to remain in German banks until they became blocked on July 13, but that is no reason for holding that the gains were not realized. Once income is earned and realized, it must be reported as income. Money deposited in a bank may be lost. If it is lost, a deduction is allowed

for loss. But the owner of the deposit can not go back and claim that income deposited in the account was not income in the first place because it was subsequently lost. The blocking of the marks on deposit on July 13 might have resulted in a loss to the taxpayer. But the evidence before the Board does not show that there was any loss to the taxpayer in 1931 from the blocking of its deposit accounts in the German banks. The pleadings on this point are not satisfactory, but even if they were, it appears that the petitioner properly reported its income from payments made prior to July 13 and is not entitled to any deduction on account of deposits in the banks on July 13.

Reviewed by the Board.

*Decision will be entered under Rule 50.*