## GWINNER v. HEINER.

### No. 8242.

District Court, W. D. Pennsylvania.

Nov. 7, 1938.

Reed, Smith, Shaw & McClay by W. A. Seifert, W. W. Booth, and J. A. McCann, all of Pittsburgh, Pa., for plaintiff.

James W. Morris, Asst. Atty. Gen., Andrew D. Sharpe and James P. Garland, Sp. Assts. to Atty. Gen., and Charles F. Uhl, U. S. Atty., and Orris Bennett, Sp. Asst. to U. S. Atty., both of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

This is an action to recover the sum of $10,108.15 with interest, alleged to have been erroneously collected from plaintiff as income tax for the calendar year 1930. Jury trial was waived.

### Opinion.

In a reorganization proceeding June 16, 1930 of the Duquesne Steel Foundry Company, Wheeling Mold & Foundry Company and Hubbard Steel Foundry Company, all of the assets of said companies were conveyed to the Continental Roll & Steel Foundry Company, a new corporation. Plaintiff was the owner of 625 shares of the stock of the Duquesne Steel Foundry Company. He had owned said stock from a date prior to March 1, 1913. On said date, the stock had a value of not less than $127.50 a share. Under the reorganization proceeding, plaintiff was entitled to and received for each share of stock that he had in the Duquesne Steel Foundry Company, $96.33 in cash, three-fourths of a share of the preferred stock of the Continental Roll & Steel Foundry Company and one and one-half shares of the common stock of said corporation. Under agreements made, plaintiff did not actually receive said stock but it was held in escrow for him by a bank in Pittsburgh. The common and preferred stock, under said agreements, could not be sold for the period of one year from June 16, 1930, and the certificates were so stamped across the face. During the year 1930, the preferred stock was released from the escrow agreement upon the express condition that it would not be sold prior to June 15, 1931, without the consent of two companies of bankers and brokers. By virtue of the restrictive agreements as to sale of said stock, it did not have a fair market value during the year 1930. Plaintiff, in his income tax return for the year 1930, returned said cash and stock received in the reorganization proceedings, showing a gain of $50,362.50. He made a claim for refund on the ground that said amount had been erroneously returned and that the stock received under the restrictive agreement did not have a fair market value during the year 1930. His claim for refund was refused; hence, he brought this action.

The applicable act, being the Revenue Act of 1928, relating to the determination of amount of gain or loss, Sec. 111 (a), 26 U.S.C.A. § 111, provides: "(a) Computation of Gain or Loss. Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b) and the loss shall be the excess of such basis over the amount realized."

Section 42 of the same act, 26 U.S.C.A. § 42, provides: "The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period."

Section 111 (c) of the same act, 26 U.S.C.A. § 111, provides: "(c) Amount realized. The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."

Section 111 (d) of the same act, 26 U.S.C.A. § 111, provides: "(d) Recognition of gain or loss. In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized for the purposes of this title, shall be determined under the provisions of section 112."

Section 112 of this act, 26 U.S.C.A. § 112, relating to recognition of gain or loss, provides:

"(a) General rule. Upon the sale or exchange of property the entire amount of the gain or loss determined under section 111, shall be recognized, except as hereinafter provided in this section. * * *

"(c) Gain from exchanges not solely in kind—

"(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."

Section 113, 26 U.S.C.A. § 113, relating to basis for determining gain or loss provides:

"(b) Property Acquired before March 1, 1913. The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be:

"(1) the cost of such property (or, in the case of such property as is described in subsection (a) (1), (4), (5), or (12) of this section, the basis as therein provided), or

"(2) the fair market value of such property as of March 1, 1913, whichever is greater. In determining the fair market value of stock in a corporation as of March 1, 1913, due regard shall be given to the fair market value of the assets of the corporation as of that date."

In Tex-Penn Oil Co. v. Commissioner of Internal Revenue, 3 Cir., 83 F.2d 518, 523, the Circuit Court of Appeals of this circuit, by C. J. Davis, stated:

"* * * did the 1,007,834 shares of Transcontinental have any 'fair market value' for income tax purposes within the meaning of the Revenue Act of 1918 at the time of their transfer?

"Transcontinental was a new company organized for the express purpose of developing new oil properties on a large scale. This was a very hazardous, speculative, and uncertain undertaking. The twelve wells which had been drilled were falling off and becoming definitely dry and profitless. The entire field which it was to develop was known to be 'spotty.' This development proved to be an absolute failure, a great financial loss, and entirely worthless. Another thing increasing the hazards in this case and rendering more uncertain any guess as to the value of the stock on August 1, 1919, was the existence of a restrictive agreement wherein it was agreed that the recipients of the Transcontinental stock would not sell or dispose of it during the life, 90 days, of the bankers syndicate with the right in the syndicate to extend the restriction for another 90 days. The determination of the value of the stock on August 1, 1919, was a mere speculative guess and a three or six months' restriction on its sale makes the guess wilder and more speculative."

In the same case in the Supreme Court of the United States, Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755, the ruling of the Supreme Court is well stated in the 7th paragraph of the syllabus: "7. Where shares of stock exchanged by a corporation for the assets of another corporation were highly speculative and were subject to a restrictive agreement preventing their sale and did not have a fair market value, capable of being ascertained with reasonable certainty, when they were acquired by the taxpayers, held that their ownership did not

lay the basis for a computation of gain at the time they were received, or for a tax as of that date under Rev.Act, 1918, Sec. 202 (b); T. R. 45, Art. 1563. P. 499." The same rule was applied as to stock held under restrictive agreements as to sale in Propper et al. v. Commissioner of Internal Revenue, 2 Cir., 89 F.2d 617. A similar ruling was made in the Seventh Circuit March 8, 1938, in the case of Schuh Trading Company v. Commissioner, 95 F.2d 404. See, also, International Mortgage & Investment Corporation, 36 B.T.A. 187 and R. E. Baker v. Commissioner, 37 B.T.A. 1135, 1155.

■ In the present case, the common stock received by the plaintiff could not be sold until June 15, 1931. The preferred stock (which was released from the escrow agreement) could not be sold prior to the date mentioned without the consent of two companies of bankers and brokers. These restrictive agreements were of such a character that a fair market value for said stock could not be fixed during the year 1930. To fix a fair market value on this stock, or stock similarly held, during the term of the restrictive agreement would be unfair to the Government in the determining of the gain or loss from the transaction, because the price of such stock would necessarily not be its fair value.

The claim for refund sufficiently sets forth the reason relied upon for recovery.

Plaintiff also claims the right to an allowance for a loss sustained in 1930 by reason of advancements or loans made by him to the Howard Silver Company, the loss claimed being based on the difference in the amount advanced or loaned and the amount the Silver Company's property sold for at Sheriff's Sale. This contention is not sustained.

In the year 1930, plaintiff was the owner of stock in the Howard Silver Company, for which he claimed and was allowed a loss of $10,175. The plaintiff and one, C. A. Cooper, owned approximately 70 per centum of the capital stock of said company. From 1920 to 1929, plaintiff made loans or advancements to the company in the sum of $70,669.18. Cooper also made loans or advancements during said period. In 1930, plaintiff, on account of the loans made by him, procured a judgment in the sum of $79,309.39 and Cooper, on account of the loans made by him, at the same time, recovered a judg-

ment against the company in the sum of $77,802.13. Plaintiff and Cooper, jointly, bid in all the properties of the Silver Company at the Sheriff's Sale for the sum of $79,309.39 under an agreement with Cooper that they would bear the purchase price in proportion to their respective judgments. Plaintiff's share of the purchase price was $40,035.13. The fair market value of the properties thus acquired by plaintiff was the purchase price, $79,309.-39. The sale was made in the year 1930. The loss of the plaintiff on account of his loan was $30,634.05, being the difference between the amount of his loan or loans of $70,669.18 and the value of the properties received by him at Sheriff's Sale of $40,035.13.

■ Plaintiff did not charge off as a bad debt during 1930 the amount of his loss by reason of his loans to the Howard Silver Company. The applicable act, being the Revenue Act of 1928, Sec. 23, 26 U.S.C.A. § 23, in relation to deductions from gross income, provides: "(j) Bad Debts. Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part."

It was conceded at the argument, that this claim is based on a loss for a bad debt; also, that a debt ascertained to be wholly worthless must be charged off within the taxable year. There is no evidence that the debt in this case was charged off during the year 1930. The loans made by the plaintiff to the Howard Silver Company were made between the years 1920 and 1929. Judgment was procured in the year 1930, execution issued and all the properties of the company sold during the year 1930. Plaintiff's loan and judgment was extinguished, or paid, to the extent of the value of the property received by him at the Sheriff's Sale. The balance of his loan or debt was all that was due him from said company and that debt was wholly worthless and was not charged off during the year 1930; hence, plaintiff is not entitled to a credit for this loss in the year 1930.

Let an order for judgment be prepared and submitted in accordance with the foregoing findings of fact, conclusions of law and this opinion.