John E. Hughes, of Chicago, Ill., and Bondy & Schloss and Charles Kurz, all of New York City, for petitioners.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., for respondent.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The petitioners appeal from deficiencies in income taxes for the year 1928 asserted against them by the Commissioner. In 1928 they owned 6,617½ shares of common stock, all the outstanding shares of the Propper Silk Hosiery Mills, Inc., a New York corporation, engaged in manufacturing "ingrain" hosiery. The authorized capitalization of the corporation was 7,500 shares of $100 par value. June 13, 1928, the corporation entered into a contract with a firm of bankers whereby it was agreed that it should transfer all its assets except cash, bonds, and real estate, to a new Delaware corporation, and in exchange therefor should receive 55,000 shares of stock of the new corporation, and the bankers agreed to purchase 45,000 shares at $21 a share. The corporation was organized with an authorized capitalization of 150,000 shares of no-par value. The New York corporation thereafter liquidated its assets, consisting of 55,000 shares of stock of the Delaware company, $562,103.61 in cash, $6,000 in bonds, and $33,041.25 in real estate, to its stockholders. It was agreed that the 55,000 shares of stock of the Delaware corporation were to be restricted as to sale, 8,600

## PROPPER et al. v. COMMISSIONER OF INTERNAL REVENUE.
### Nos. 121–123.
Circuit Court of Appeals, Second Circuit.
April 12, 1937.

for 90 days after public offering by the bankers and after listing on the Curb Exchange, and 46,400 shares for a period of 5 years. The certificates for the 46,400 shares contained the notation that the stock could not be transferred or in any way disposed of for 5 years except in accordance with a designated agreement between the parties. The agreement referred to provided that no sale could be effected during the specified period except with the written consent of the bankers.

The Board made findings that the petitioners originally sought to negotiate the sale of the new corporation's stock free from any restrictions as to sale but that they were unable to do so; that they later unsuccessfully requested the bankers to remove the restriction; that ineffectual efforts were made late in 1928 and early in 1929 to sell the shares subject to the restriction or to have them accepted as collateral; that the petitioners held their shares until the restriction expired in 1933; and that at that time the restricted shares were selling at a maximum of $1.50 a share on the Curb Exchange. It also found that, when the foregoing negotiations were consummated in 1928, unrestricted shares were selling on the Exchange at $33 per share.

The petitioners reported as capital net gain in 1928 the difference between the cost of their shares in the New York corporation in 1919 and 1920 and the amount received on the reorganization in 1928, which was computed without including a value attributable to the 46,400 shares of restricted stock. The Commissioner increased the gain reported from the transaction by including in the amount received by each petitioner the fair market value of the stock of the Delaware corporation which he found to be $21 a share. The Board of Tax Appeals sustained the Commissioner. 33 B.T.A. 261.

It is agreed that section 112(c) of the Revenue Act of 1928, 45 Stat. 791, 817 (26 U.S.C.A. § 112(c) and note), is applicable; and it is therein provided that where, as a result of a reorganization, a stockholder receives not only stock in the reorganized corporation "but also * * * other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property." The sole issue is whether the stock received by the petitioners had an assignable market value; or,

rather, whether the Commissioner had any basis for finding, and the Board for confirming, that the stock received had a value of $21 per share or any other value sufficiently ascertainable to justify its inclusion in the computation of the tax.

In Helvering v. Tex-Penn Oil Co., 57 S.Ct. 569, 577, 81 L.Ed. ——, decided by the Supreme Court March 29, 1937, a corporation had been organized to take over and operate oil properties. The stock of the new corporation was issued subject to a restriction against sale for 90 days, the duration of the bankers' syndicate, with a right in the syndicate to extend the period another 90 days. There, as here, the restrictive agreement was the bankers' bargain, subsequent events—in that case the collapse of the enterprise and here the maximum value of the stock in 1933—indicated the impropriety of the valuation arrived at, and expert testimony was ignored and a value assigned to the stock without facts to justify it. The court held that, even if the transaction was taxable—which it was held not to be—no real value could be ascribed to the stock, saying that "the shares of * * * stock, regard being had to their highly speculative quality and to the terms of a restrictive agreement making a sale thereof impossible, did not have a fair market value, capable of being ascertained with reasonable certainty, when they were acquired by the taxpayers." That holding applies with equal force, at least, to the instant case.

The record reveals only two facts upon which reliance could have been placed in arriving at the estimated value; one is the payment by the bankers of $21 per share for the 45,000 unrestricted shares which they purchased, and the other is the quoted price of $33 at which the unrestricted shares were selling on the Curb Exchange at the termination of the transactions in 1928. On the other hand, findings were made that the shares in question were subject to a 5-year restriction on sale waivable only upon the bankers' consent, that unsuccessful efforts were made to sell the shares subject to the restriction or have them accepted as collateral, and that at the end of the restrictive period the shares were selling at a maximum of $1.50 on the Curb Exchange. Furthermore, petitioners produced ample expert testimony to the effect that the restricted shares either had no fair market value, or a nominal value at best.

■■ The respondent would have us believe that an arbitrary valuation must be accepted since, it is argued, taxpayers may not by formulating agreements, such as the restrictive agreement herein, postpone or interfere with the orderly processes of taxation. Of course, the validity of the agreement is not impeached nor do we understand that any charge of tax evasion is made. Admittedly the imposition of a tax may not be postponed or prevented by agreements among the holders of stock intended to concentrate control or to bolster the market where a determinable market value exists and where such value is arrived at upon sufficient evidence. Wright v. Com'r, 50 F.(2d) 727 (C.C.A.4), cert. den. 284 U.S. 652, 52 S.Ct. 32, 76 L.Ed. 553; Bassick v. Com'r, 85 F.(2d) 8 (C.C.A.2), cert. den. November 9, 1936, 57 S.Ct. 120, 81 L.Ed. ——. But, where an agreement, such as the one herein, strips the stock of an ascertainable market value, Helvering v. Tex-Penn Oil Co., supra; but compare, Newman v. Com'r, 40 F.(2d) 225 (C.C.A.10), cert. den. 282 U.S. 858, 51 S.Ct. 33, 75 L.Ed. 760, the requirement of the taxing statute is not satisfied, and a finding of value cannot be sustained.

Determination reversed.