RICHARDS' ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

COMMISSIONER OF INTERNAL REVENUE v. RICHARDS' ESTATE et al.
(two cases).

Nos. 158, 166, 167.

Circuit Court of Appeals, Second Circuit.

July 2, 1945.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

Paul Van Anda, of New York City (John W. Davis, of New York City, of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Robert N. Anderson, and Melva M. Graney, Sp. Assts. to Atty. Gen., all of Washington, D. C., for respondent.

CHASE, Circuit Judge.

Eugene Lamb Richards and Fred Y. Presley were joint adventurers who promoted an investment trust called National Investors Corporation. In connection with the underwriting, Presley obtained the agreement of the Guardian Detroit Company dated June 2, 1927, to assign 10,000 options on the stock of National Investors Corporation to Presley's nominee, which represented a part of the profits of the promotion. On June 9, 1927, Presley made an agreement with Richards to sell him all, or not less than 7,000, of them for $10 each. On September 27, 1927, Richards died before he had received any of the options and on February 9, 1928, Presley and Guardian Detroit Company paid his widow and executrix, Florence W. E. Richards, $5000 for a release in full from all liability under the agreement of June 9, 1927. Thereafter Mrs. Richards sued Presley, Guardian Detroit Company and National Investors Corporation in the New York Supreme Court, to set aside the release, on the ground that it was obtained by fraud, and for an accounting. After lengthy litigation she recovered a judgment against all the defendants jointly and severally for $381,324.74, and appeals from this judgment were duly taken by all parties and were pending when the parties agreed to a settlement and carried it out as follows.

After attorneys representing the executrix, Presley and National Investors Corporation had had some preliminary conversation during which $150,000 was offered by National Investors Corporation and Presley and refused by the plaintiff's attorney, there was a meeting of the three on December 4, 1936, at which National Investors Corporation offered to pay $100,000 and Presley offered to pay a like amount for a release from all their liability on the judgment. No offer was made by Guardian Detroit Company, which does not appear to have been represented in the negotiations. The plaintiff's attorney said that he thought the judgment could be settled for $200,000 and agreed to recommend the acceptance of that amount to Mrs. Richards but he, knowing that all that was paid to carry out the settlement would be taxable as income, expressed some concern about income taxes and said the settlement would have to be effected in such a way that "the taxes would not eat up all the recovery." The offer of National Investors Corporation was to pay in 1936, and for reasons of its own it insisted that its offer be accepted for such payment. That was done and it paid $100,000 on December 9, 1936, and received a release from all its liability on the judgment. Presley also desired to pay his $100,000 in December 1936 and was prepared to do so but only in return for a release from liability on the judgment. The plaintiff's attorney was unwilling to settle with Presley on terms which made anything payable by Presley in 1936 because of his desire to make a tax saving. Instead of accepting Presley's offer to pay in 1936, the plaintiff's attorney offered to recommend to his client the acceptance of Presley's payment in January 1937 and the delivery of the release to him upon payment then. Presley agreed to that and the Tax Court justifiably found that the relations between the plaintiff and her attorney were such that "the recommendation of the attorney to settle the litigation was tantamount to acceptance by Florence W. E. Richards." In this way an agreement was made to release the liability of Presley in 1937 on the judgment in consideration for the then payment of the amount Presley had offered to pay for a release in 1936. Later in December the plaintiff's attorney was informed that a release of the liability of the Guardian Detroit Company on the judgment was also required in return for Presley's payment. After the first of January 1937 there were no further negotiations, but on January 9, Presley's attorney was notified that the plaintiff's attorney was ready to deliver the releases upon payment of the $100,000. This was then done although only $95,000 was then actually received by the plaintiff's attorney as it was agreed that Presley might pay and deduct a referee's fee of $5000.

Two days before National Investors Corporation made its payment and received its release Mrs. Richards, as executrix, assigned to herself individually and as sole legatee under the will of her husband a three-fifths interest in the judgment, the cause of action, and the contract of June 9, 1927, in so far as National Investors Corporation was concerned, reserving all rights against the other defendants. Later

in the same day, acting in her individual capacity, she assigned one of the three-fifths to her daughter, Diana E. R. Lucas, and one of them to her son, Eugene Lamb Richards III, as gifts. On January 5, 1937, she made a like assignment of the judgment, the cause of action, and the contract of June 9, 1927, in so far as they affected Presley and the Guardian Detroit Company.

■ Laying aside for the time being the effect of the assignments made by Mrs. Richards either as executrix or individually, the first issue is whether the payment made by Presley in 1937 was constructively received by the executrix in 1936 and taxable as income in that year. It is conceded that the full amount of the settlement was taxable income in one year or the other.

The Tax Court found that "the proceeds of the settlement in the total sum of $195,000 were available to the Estate of Eugene Lamb Richards in December 1936" and held that the entire amount was taxable as income of the estate in that year. The reasoning of the court which led to this holding was that Mr. Spence, the plaintiff's attorney, could have received the full amount in 1936 had he been willing to do so; that it was constructively received for purposes of taxation in the year during which, but for his desire to make a tax saving, it might have been received.

Decision must turn not upon what Mr. Spence might have done in 1936 to accept Presley's offer but upon what, if anything, he did do to make the proceeds of the offer available to the petitioner in that year for her full control and disposition. The executrix had a judgment for a far greater amount than was offered in settlement but it might be reversed on appeal and nothing was "available" to her in 1936 by reason of the judgment alone. On the other hand it might be affirmed and she, free to take her chances on that, was under no obligation to accept in 1936 any offer to settle for less than the amount of that judgment. As the offer of settlement Presley made was only to pay less than the remainder of the judgment in full, that amount was made "available" to the petitioner only at the price of releasing him and Guardian Detroit Company from all liability on the judgment. Her attorney would not pay that price in 1936 though it is clear that he then had the opportunity to do so. It is equally clear that he was under no obligation to agree to forego any of his client's rights under the judgment except upon such terms as he saw fit to impose, and it is immaterial that his reason for imposing the terms he did was a desire to save taxes. The obligations of the parties under the settlement as agreed to are what count and under them nothing was credited or set apart to the petitioner which could be drawn upon in 1936. At least that much was required by the applicable regulation to constitute constructive receipt of the money Presley agreed to pay. T.R. 111, § 29.42–2. The money had to be placed unconditionally at the disposal of the petitioner before it was constructively received by her. Lucas v. North Texas Lumber Co., 281 U.S. 11, 50 S.Ct. 184, 74 L.Ed. 668. Compare, Bedell v. Commissioner of Internal Revenue, 2 Cir., 30 F.2d 622, 624. That was not done in 1936.

■ The assignments of the three-fifths interest were all executed before the making of the settlement payments to which they must be considered related, and in terms they covered not only that part of the assignor's interest in the judgment but also that part of her interest in the cause of action and the contract of June 9, 1927. She had, however, disposed of her interest in the contract in the transaction in which she had years before received $5000 for it. She had left only a claim against the defendants which was reduced to a money judgment, and the question whether the contract of June 9, 1927, or the cause of action based on the fraud by which the executrix was induced to release her rights in that contract might be regarded as "property" for tax purposes is a matter of no consequence. So long as the judgment she had obtained remained unreversed, it was the measure of her "interest" in the "property," whatever that property may have been, and that judgment was never reversed. By means of the settlement with National Investors Corporation and the settlement with Presley what was due and payable to the executrix in satisfaction of the judgment was fixed as to amount and time of payment. When she executed the assignments which disposed of part of the net proceeds of the settlement before its receipt, those proceeds were all payable to her and were all income which grew out of the 1927 contract, the fraud through which she was induced to release her rights under that

contract, the cause of action on which she sued, and the judgment she obtained in that action. No matter how the assignments were drawn and what they purported to cover, they were in fact but transfers of the income represented by the settlements in anticipation of its receipt. The executrix "realized" that income to the extent that she disposed of her right to collect it when she executed the assignments. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Helvering v. Horst, 311 U.S. 112, 116, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81; Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055; Doyle v. Commissioner of Internal Revenue, 4 Cir., 147 F.2d 769. In our opinion, therefore, the settlement payments made by National Investors Corporation and Presley, less deductible expenses of the suit properly allocable to each of them, are taxable to the estate in the years in which the payments were made to the same extent they would have been taxable had the executrix made no assignments.

The petitions of the Commissioner were filed only as a procedural precaution to protect the revenue in the event that the decision of the Tax Court should be reversed in whole or in part. As what should be done in that respect on the remand follows as a matter of course from what we have already decided, no discussion of those petitions is now required.

The decision of the Tax Court is reversed and the deficiency expunged in so far as it is based upon the constructive receipt in 1936 of the amount of the Presley settlement. It is otherwise affirmed and the cause is remanded for further proceedings consistent with this opinion.

L. HAND, Circuit Judge (concurring).

I agree: Spence could not hold Presley, unless Presley could hold Spence; and if Spence could not hold Presley, Presley could change his mind. The likelihood that Presley would not change his mind, before Spence accepted the offer, did not give Spence any "actual command over the income" to be taxed (Harrison v. Schaffner, 312 U.S. 579, 581, 61 S.Ct. 759, 761, 85 L.Ed. 1055); it gave him no more than high expectations that he could get such "actual command." Had there been a shift in judicial decision favorable to Presley before Spence chose to accept,

Presley would have been free to withdraw his offer; and indeed, there would have been nothing even dishonorable in doing so, for that was precisely the risk that Spence meant to take, thinking it negligible. I lay aside any constitutional question: i. e. whether there can be an "amount realized" out of probabilities alone, however certain—though surely that is a question not wholly free from doubt—; because, even assuming that there can be, Congress and the Treasury have never made any effort to make capital gains out of anything but legal claims to property, or property itself.