## UNITED STATES v. DRESCHER.
### No. 111, Docket 21427.

United States Court of Appeals
Second Circuit.

Argued Jan. 5, 1950.

Decided Feb. 16, 1950.

Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, A. F. Prescott and Hilbert P. Zarky, Special Assistants to the Attorney General, George L. Grobe, United States Attorney, Buffalo, N. Y., and Austin J. Donovan, Assistant United States Attorney, Rochester, N. Y., for appellant.

Nixon, Hargrave, Middleton & Devans, Rochester, N. Y., Attorneys for appellee; T. Carl Nixon, Rochester, N. Y., Hugh Satterlee, New York City, and Scott Stewart, Jr., Rochester, N. Y., of counsel.

Before L. HAND, Chief Judge, and SWAN, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This appeal brings up for review an action against the United States to recover additional income taxes for the years 1939 and 1940 which the plaintiff asserts were illegally assessed and collected. He was an officer and director of Bausch & Lomb Optical Company, and in each of the taxable years the Company purchased from an insurance company at a cost of $5,000 a single premium annuity contract naming him as the annuitant. The taxes in dispute resulted from the Commissioner's including such cost as additional compensation received by the plaintiff in the year when the annuity contract was purchased. The district court

awarded the plaintiff judgment for over-payments in the aggregate amount of $5,-924.22, ruling that he received no income in 1939 or 1940 attributable to the purchase of the annuity contracts. The correctness of this ruling is presented by the appeal.

The facts are not in dispute. In 1936 the Optical Company inaugurated a plan to provide for the voluntary retirement at the age of 65 of its principal officers then under that age. There were five such, of whom Mr. Drescher was one. He was born April 28, 1894. Pursuant to this plan and in "recognition of prior services rendered," the Company purchased on December 28, 1939, and on the same date in 1940, a single premium, non-forfeitable annuity contract which named Mr. Drescher as the annuitant. Each policy was issued by Connecticut General Life Insurance Company and was delivered to the Optical Company which retained possession of it. It was the Company's intention, and so understood by the annuitant, that possession of the policy should be retained until the annuitant should reach the age of 65. The premium paid for each policy was $5,000. The amount of such payment was deducted by the Company in its tax return for the year of payment as part of the compensation paid to Mr. Drescher during that year. His salary as an officer was not reduced because of the purchase of the annuity contract, and he was not given the option to receive in cash the amounts expended by the Company for the premium payments. In filing income tax returns Mr. Drescher reported on the cash basis; the Optical Company on the accrual basis.

By the terms of the policy the Insurance Company agrees to pay the annuitant, commencing on December 28, 1958, a life in-come of $54.70 monthly under the 1939 policy and $44.80 monthly under the 1940 policy, with a minimum of 120 monthly payments. If the annuitant dies before receiving 120 monthly payments, the rest of them are payable to the beneficiary named in the policy. Each policy gives the annuitant an option to accelerate the date when monthly payments shall commence, but this option must be exercised by the annuitant in writing and endorsed on the policy. Consequently so long as the Optical Company retains possession of the policy the annuitant cannot exercise the option. If the annuitant dies before December 28, 1958, or before the acceleration date if he has exercised the option to accelerate monthly income payments, a death benefit is payable to the beneficiary designated by him (his wife). The policy reserves to him the right to change the beneficiary. The policy declares that "Neither this contract nor any payment hereunder may be assigned, and the contract and all payments shall be free from the claims of all creditors to the fullest extent permitted by law." The policy has no cash surrender, salable, or loan value, and does not entitle the annuitant to a distribution of surplus.

This case is governed by the provisions of the Internal Revenue Code as they existed in 1939 and 1940. The appellant contends that the contracts are taxable to the annuitant in the year of purchase by the employer because § 22(a), 26 U.S.C.A., sweeps into gross income "compensation for personal service, of whatever kind and in whatever form paid, * * * and income derived from any source whatever." The taxpayer replies that these general provisions must be construed with regard to § 22(b) (2), printed in the margin,[1] as well

---

1. Sec. 22(b) (2) "Annuities, etc.—Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this

as to § 165 relating to employees' trusts, and §§ 42 and 43 relating to accounting periods and methods of accounting. He cites Treasury rulings to the effect that retirement annuity contracts purchased for an employee gave rise to taxable income only as the annuitant received payments under the contract; and that the entire amount of each annuity payment was includible in gross income for the year of its receipt if he had made no contribution toward the purchase of the annuity, while, if he had made contributions, he was taxable in the manner and to the extent provided in § 22 (b) (2) by the three per cent. rule.[2]

Whether we should construe the statute in accord with these Treasury rulings if the matter were *res integra,* we need not say.[3] In this court the question of construction is not *res integra* because of our decision in Ward v. Commissioner, 2 Cir., 159 F.2d 502. That case involved a single premium annuity contract delivered to the annuitant and assignable by him. We there held that "the petitioner became taxable in 1941 upon whatever value was, by the delivery of the policy to him in that year, then unconditionally placed at his disposal. * * * This was the then assignable value of the policy." 159 F.2d page 504. We then considered whether it was error to value the policy in the amount of the premium paid for it. We recognized that the assignable value of the policy in 1941 might be less than the single premium paid for it, but as the purchaser had offered no proof that it was we held that the Tax Court was right in treating "cost to the purchaser as the assignable value of the policy when re-

ceived by the taxpayer." 159 F.2d page 505.

█ As we shall not overrule the Ward case, the question is narrowed to determining whether the present case is distinguishable because the plaintiff's policies are non-assignable and were retained in the possession of the employer. We do not think these facts are sufficient to distinguish the cases with respect to taxability of the contracts, although they may affect the value of the rights the respective annuitants acquired. It cannot be doubted that in 1939 the plaintiff received as compensation for prior services something of economic benefit which he had not previously had, namely, the obligation of the insurance company to pay money in the future to him or his designated beneficiaries on the terms stated in the policy. That obligation he acquired in 1939 notwithstanding the employer's retention of possession of the policy and notwithstanding its non-assignability. The perplexing problem is how to measure the value of the annuitant's rights at the date he acquired them. The taxpayer contends that they then had no present value, while the appellant argues that their value was equal to the premium paid by the employer. We are unable to accept either contention.

█ The prohibition against assignment does not prove complete absence of present value. The right to receive income payments which accrued to the plaintiff when the Optical Company received each contract represented a present economic benefit to him. It may not have been worth to him the amount his employer paid for it; but it cannot be doubted that there is a figure,

---

chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph."

2. I.T. 1810, II-2 C.B. 70 (1923); I.T.

2891, XIV-1 C.B. 50 (1935); G.C.M. 14593; XIV-1 C.B. 50 (1935); I.T. 2874, XIV-1 C.B. 49 (1935); I.T. 3292, 1939-1 C.B. 84; I.T. 3346, 1940-1 C.B. 62. This construction was apparently approved in Moore v. Commissioner, 45 B.T.A. 1073; Jones v. Commissioner, 2 T.C. 924. Contra: Brodie v. Commissioner, 1 T.C. 275.

3. The Treasury rulings were distinguished or rejected in Hackett v. Commissioner, 1 Cir., 159 F.2d 121, 124; Oberwinder v. Commissioner, 8 Cir., 147 F.2d 255, 257.

greater than zero although less than the premium cost, which it would have cost him to acquire identical rights. Likewise, the assurance that any beneficiary named by him at the time the contract was executed, or substituted by him at a later date, would in the event of his death receive the cost of each contract, plus interest after a few years, conferred a present economic benefit on him. Whatever present value the life insurance feature had to him is clearly taxable. See Commissioner of Internal Revenue v. Bonwit, 2 Cir., 87 F.2d 764, certiorari denied Bonwit v. Helvering, 302 U.S. 694, 58 S.Ct. 13, 82 L.Ed. 536. Another element of value inheres in the possibility that the annuitant could realize cash by contracting with a putative third person to hold in trust for him any payments to be received under the annuity contract. True, the promisee would run the risk that the annuitant might die before becoming entitled to any payments, in which event they would be payable to the beneficiary designated in the policy, but by exercising the reserved power to change the beneficiary the annuitant could designate his promisee. The power to make such a contract based on the policy may well have had some present value. No proof was offered as to this. For reasons which will be stated later the plaintiff had the burden of proving the amount by which he was overtaxed. On the other hand, it seems clear that the policy was worth less to the annuitant than the premium paid because the employer's retention of possession precluded him from exercising the privilege of accelerating the date of annuity payments since the insurance company's approval had to be endorsed upon the policy. The granting of this privilege must have been one of the factors taken into account in fixing the premium—at least, we may so assume in the absence of evidence. Hence deprivation of ability to exercise the privilege would decrease the value of the policy to the annuitant below its cost to the employer.

None of the authorities relied on by the parties is precisely in point on the issue of valuation. In Hackett v. Commissioner, 1 Cir., 159 F.2d 121 although the policy was non-assignable, the value to the annuitant was measured by the cost of the premium. As already stated, that basis is inapplicable here, for retention of the policy by the employer cut off the acceleration privilege. The same distinction exists with respect to the partially assignable policy involved in Oberwinder v. Commissioner, 8 Cir., 147 F.2d 255. And the tax treatment of the assignable policy in that case, as well as of those involved in the Ward case and in Hubbell v. Commissioner, 6 Cir., 150 F.2d 516, 161 A.L.R. 764, affords little guidance to a correct valuation here. Likewise, the cases holding free from taxation a non-assignable promise to pay money at a future date do not assist us, since they rest decision on taxability—here concluded by the Ward case—rather than on valuation.[4] But it is unnecessary on the present appeal to determine the precise valuation of the policies.

As already mentioned the burden of proving by how much he was overtaxed was on the plaintiff. He had paid the additional taxes assessed upon the valuation ascribed by the Commissioner to the annuity contracts. An action to recover taxes erroneously collected is essentially an action for money had and received and unjustly detained by the defendant. Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265; DeGuire v. Higgins, 2 Cir., 159 F.2d 921. Hence the plaintiff must show how much was unjustly detained. He relied upon the terms of the contract to prove that it had no present value whatever. But for reasons already stated we are satisfied that the 1939 policy had some present value and since he did not prove that such value was less than $5,000, the judgment in his favor cannot stand.

The equitable nature of the action also disposes of another contention of the

4. Bedell v. Commissioner, 2 Cir., 30 F.2d 622; Richards' Estate v. Commissioner, 2 Cir., 150 F.2d 837, 160 A.L.R. 1186; and see Propper v. Commissioner, 2 Cir., 89 F.2d 617.

plaintiff, namely, that the policy purchased in 1940 was in no event taxable in that year. Although the policy was dated December 28, 1940 and the premium was paid in that month, it was mailed from Philadelphia on December 31, 1940 and was not received by the Optical Company until early in January 1941. The policy provided "This contract shall not take effect until the contract has been delivered * * *" Consequently no rights under it were acquired by the annuitant until 1941 and the value of the policy was not income to him in 1940. See Avery v. Commissioner, 292 U.S. 210, 54 S.Ct. 674, 78 L.Ed. 1216. However, since the plaintiff must show unjust enrichment, he cannot recover the 1940 tax if the United States was entitled to a tax of equivalent amount for the year 1941. Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265. No proof was offered on that subject. Determination of this issue, as well as of the value to the annuitant of the contracts when executed must await trial after remand.

Judgment reversed and cause remanded.

CLARK, Circuit Judge (dissenting in part).

I agree that the judgment must be reversed, but do not share in the view that some amount less than the $5,000 expended by the employer for this taxpayer in each of the years in question may be found to be the value of the annuity and hence the amount of additional compensation for which he is to be taxed.[1] For the contrary seems to me well supported in reason and well established by the authorities cited in the opinion, some directly in point and some with, I suggest, immaterial variations of fact. In the light of modern conditions of life, the satisfying of the highly natural and indeed burning desire of most men of middle age to obtain security for their old age and for their widows at death seems so clearly an economic benefit that I wonder it has been questioned as much as it has. Nor do I see the need to support this conclusion by looking for some highly theoretical possibility of turning this benefit into immediate dollars and cents any more than in the case where an employee is furnished living quarters or meals. Just as the latter are valued as additional compensation, though not assigned or assignable, so I think this highly valuable security is a purchased benefit for these company executives. Consequently the making of nice distinctions in either taxability or the amount thereof between assignable or accelerable annuities or their delivery or retention by the company—after careful forethought and advice of its attorneys with naturally an eye on both pension and tax possibilities[2]—seems to me improper, when the general purpose to make adequate retirement provisions for these employees was made so clear.

Hence for any issues here involved I do not think it is important to discover what reasons impelled the employer to make the slightly differing provisions from those before this court in Ward v. Commissioner, 2 Cir., 159 F.2d 502, 505. Perhaps the employer may have had the prescience to foresee these tax problems which are troubling my brothers and did trouble the court below and may result in at least postponement, if not non-collectibility, of most, if not all, of the tax on the additional return provided by the employer for these

---

1. This would call for dismissal at least of any claim for refund of the 1939 taxes. The special point as to the 1940 taxes appears to have been first raised in the appellee's brief before us; as to this I should have been disposed to ask for further argument. On the basis of what is now before us, I am inclined to doubt the conclusion of the opinion that the additional compensation was not taxable in 1940. It was actually paid in 1940; moreover, the policy was issued in Hartford on December 28, 1940, and it was mailed from Philadelphia to the employer by an insurance agency corporation with which the employer had arranged for the contracts in a letter of December 31, 1940, enclosing the "contracts bought in the year 1940."

2. The annuity contracts for the earlier years, 1936 and 1937, were actually delivered by the president to the taxpayer and the other annuitants, but were retrieved after counsel had advised this course.

executives. Perhaps, rather, the employer was providing only for a surer provision "free from the claims of all creditors to the fullest extent permitted by law" for this taxpayer and his wife. So in retaining possession of the policies and cherishing the present intent not to permit acceleration of the annuities, the employer may have had in mind a way of both securing the purchased services to the retirement age in normal cases and guarding against unusual situations due to disability or other special cause. In any event the fact is that the employer purchased at the going insurance rate those contracts which for the parties fulfilled the conditions desired.[3] Actually they would return to the annuitant, or to his widow, total amounts at least well in excess of the premiums paid and increasing yet more the longer he lived. The parties got just what they paid for in the insurance market, and its cost price is the additional compensation the executive received. The two features stressed in the opinion, namely, the nonassignability and the present nonaccelerability of the annuities, may add to their usability for the particular purpose, but would seem not to change the basis of value. Perhaps, indeed, they render the contracts more desirable not only to the employer, but also to the annuitant's wife, as making the security provisions less easily impaired, and thus have a special appeal to a huband solicitous of his wife's future. At least, I do not see what basis we have for thinking they adversely affect values of provisions for a particular purpose, viz., security. If, in fact, these conditions do affect the amount of the premium, as the opinion rather naturally assumes, then all the more is the bargain of the parties to be respected as made; even the annuitant would doubtless be interested in a maximum return though it be strictly limited to himself or his wife. It seems to me that there is being set up some premise, not found in any of the precedents, of a fictitious partly-impaired transferability which is now somehow to be given a value in place of the wholly practical values set upon these contracts in the insurance market itself.

Of the cases, Hackett v. Commissioner, 1 Cir., 159 F.2d 121, seems directly in point and Judge Mahoney's opinion wholly persuasive as to both the meaning of the statute and the value to be set upon a nonassignable annuity contract. The suggested ground of distinction, that here retention of the policy by the employer cut off the acceleration privilege, cannot be accepted, since there does not appear to have been any such privilege in the annuity there considered; for no mention of the fact, or allusion of any kind to it, is made by the court. The same is true in Oberwinder v. Commissioner, 8 Cir., 147 F.2d 255, which also appears to be on all fours with this case. Similar results were reached in Hubbell v. Commissioner, 6 Cir., 150 F.2d 516, 161 A.L.R. 764, and by this court in Ward v. Commissioner, supra; for the reasons I have stated, the fact that the annuities in these cases were assignable should not make their purchase price any more accurate a gauge of their value than is the purchase price here. A like conclusion has been reached with respect to insurance premiums, Commissioner of Internal Revenue v. Bonwit, 2 Cir., 87 F.2d 764, certiorari denied Bonwit v. Helvering, 302 U.S. 694, 58 S.Ct. 13, 82 L.Ed. 536, and amounts deposited in the federal Civil Service Retirement Fund, Miller v. Commissioner, 4 Cir., 144 F.2d 287; while no case supporting a lesser valuation has been discovered. True, in the Ward case we spoke of the failure of the taxpayer "to show that the contract was not worth as much as it cost." Surely there is nothing in this record to suggest anything different. Here there was even an official of the insurance company to testify to the somewhat ordinary nature of these contracts. That the parties actually got the particular provisions they desired

---

3. This was a tightly controlled corporation, so much so that the executives receiving the annuities and their families owned approximately 35 per cent of the voting stock, while the older officers and directors owned approximately 57 per cent. Hence there was never a sharp divergency of interest between these executives and their employer.

for their purposes does not at all suggest that the policies were overpriced.

Hence unless these benefits are now taxed, this small group of top executives will be given a tax advantage not accruing to less fortunate or less well-advised persons. Such taxation should not be confused or rendered abortive by directions for valuation impossible of execution in any realistic way.