1244

## ELLIOTT C. MORSE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 23763, 29822.   Promulgated January 28, 1952.

*J. H. Amick, C. P. A.*, for the petitioner
*Norment Custis, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* Respondent's concession that no tax consequences for 1941, as far as petitioner is concerned, flowed from the purchase of the annuity contract by the Corporation in that year, directs our attention to the year 1943.

Some recapitulation of the facts and legal consequences, as we see them, will be helpful. In 1941 the board of directors of petitioner's employer determined to provide a monthly income for petitioner upon his retirement. As a preliminary step in that direction the corporate employer, as purchaser, and petitioner, as annuitant, applied for a single premium life annuity on the life of petitioner. The annuity contract was issued in 1941 and the entire premium was paid by the employer in that year. Since petitioner had not yet retired, however, all benefits, options, rights, and privileges under the contract were reserved to the employer. As a result of this reservation the Corporation became the owner of the contract and petitioner received no economic benefit whatever in 1941 because of the purchase. This is the basis for respondent's concession that petitioner received no taxable income in 1941 as a result of the transaction.

As of December 31, 1942, however, petitioner retired and in January 1943 the Corporation caused all of its ownership rights to the annuity policy to be endorsed over to petitioner. From the date of the policy until January 1, 1943, the Corporation had received all payments due under the policy. From and after January 1, 1943, petitioner became owner of the policy and during the year 1943 petitioner received the monthly payments thereunder totalling $3,000.

In these circumstances respondent urges that petitioner was taxable in 1943 on the value of the policy. Petitioner admits that he was taxable on the monthly payments he received in 1943, but contends that he is not to be taxed otherwise in that year for the valuable rights or economic benefits which accrued to him by virtue of the endorsement over to him of the policy.

Petitioner founds his argument on section 22 (b) (2) (B) of the Internal Revenue Code.[1] This section, so the argument goes, excludes from gross income all income with respect to employee's annuities, except such amounts as are therein specifically includible. The first sentence of that section concededly is not applicable here. However, the second sentence, according to petitioner, is all important. In effect, that sentence provides that in all other cases of employee annuity contracts (i. e., other than those covered by the first sentence) the amount contributed by the employer for such contracts *on or after* the employee's rights thereunder become nonforfeitable shall be included in the income of the employee *in the year* in which the amount is contributed. Petitioner continues his argument by pointing out that the contract here in question is an employee annuity contract; that his rights thereunder became nonforfeitable in 1943 when the contract was endorsed over to him; that his employer's contribution for the contract was made in 1941 when it was purchased and not in 1943, and, therefore, since his employer contributed nothing for the contract in 1943 the amount to be included in petitioner's gross income for 1943 is zero.

In summary, petitioner states in his brief: "had not Section 22 (b) (2) (B) become effective prior to January, 1943, petitioner's case would follow the Brodie-Oberwinder-Hubbell-Hackett line of cases." (*Renton K. Brodie*, 1 T. C. 275; *Oberwinder* v. *Commissioner*, 147 F. 2d 255; *Hubbell* v. *Commissioner*, 150 F. 2d 516; *Hackett* v. *Commissioner*, 159 F. 2d 121.) In other words, but for section 22 (b) (2) (B) petitioner would be taxable on the valuable rights conferred on him in 1943 under the broad provisions of section 22 (a).

On cursory examination petitioner's argument appears plausible enough. Further study, however, convinces us of its unsoundness. Respondent contends that the section relied on does not here apply and we have been referred to no cases demonstrating its applicability.

[1] SEC. 22.
(b) Exclusions from Gross Income.
(2) Annuities, etc.—
(B) Employees' Annuities.—If an annuity contract is purchased by an employer for an employee under a plan with respect to which the employer's contribution is deductible under section 23 (p) (1) (B), or if an annuity contract is purchased for an employee by an employer exempt under section 101 (6), the employee shall include in his income the amounts received under such contract for the year received except that if the employee paid any of the consideration for the annuity, the annuity shall be included in his income as provided in subparagraph (a) of this paragraph, the consideration for such annuity being considered the amount contributed by the employee. In all other cases, if the employee's rights under the contract are nonforfeitable except for failure to pay future premiums, the amount contributed by the employer for such annuity contract on or after such rights become nonforfeitable shall be included in the income of the employee in the year in which the amount is contributed, which amount together with any amounts contributed by the employee shall constitute the consideration paid for the annuity contract in determining the amount of the annuity required to be included in the income of the employee under subparagraph (A) of this paragraph.

Fairly read,. and under the facts of this case, we think that section 22 (b) (2) (B) even if applicable, would require petitioner to include in income in 1943 the value of the annuity contract. Prior to that year petitioner had no rights whatever in the contract. It was of no value at all to him in an economic sense. His employer was the sole owner and entitled to collect all policy payments for itself, which it did prior to endorsement over to petitioner in 1943. It could have changed the beneficiary at any time to the exclusion of the petitioner. The corporation owed petitioner no legal obligation to turn over to him at any time the annuity contract.

Petitioner argues, however, that he is only required to include in income the amount contributed for the annuity contract on or after his rights in the contract became nonforfeitable which was in 1943, whereas, the employer's "contribution" for the contract was the amount paid for it in 1941. Undeniably petitioner's rights became nonforfeitable in 1943, for prior thereto, as we have pointed out, he had no rights at all, not even forfeitable rights, in the contract. But was the amount paid by the Corporation for the policy in 1941 the "amount contributed by the employer for such annuity contract," within the meaning of the statutory language? We think not. To us, that language means amounts paid over by the employer for the benefit of the employee. When the payment was made in 1941 petitioner, the employee here, received no benefit from it of any kind. The policy then purchased belonged entirely to his employer. Only by endorsement in 1943 did petitioner become entitled to anything under the policy, and it was then that the Corporation made its contribution for the contract. Only then did it really divest itself of anything for petitioner's benefit. Theretofore it held the policy as a kind of investment of its own. On these facts, harsh as this result seems, we think the principles laid down in *Renton K. Brodie, supra,* and the cases which have followed it are controlling and that section 22 (b) (2) (B) does not change the situation. Accordingly, we conclude that petitioner was taxable in 1943 because of the transfer of the policy to him in that year.

There remains the subsidiary problem of the amount on which petitioner is taxable. Respondent contends this should be the amount spent by the employer for the policy in 1941 less the amount recovered by the employer in the interim, computed as follows:

| | |
|---|---|
| Cost of single premium, 1941 | $37, 645. 25 |
| Recoveries, 15 months at $250 | 3, 750. 00 |
| | $33, 895. 25 |

The record presents us with two other possible alternatives: (1) the amount an annuity based on petitioner's life similar in every respect

to the policy here in question, except limiting the period certain to 8 years and 9 months instead of 10 years, would have cost on January 1, 1943, or $37,150; or (2) the present value, as of January 1, 1943, of the annuity policy here in question, computed under established actuarial principles and using the Actuaries' or Combine Experience Table of Mortality and 4 per cent interest rate, or $25,867.50.

The amount of $33,895.25 contended for by respondent is a concession from the $37,645.25 (original cost) reflected in the deficiency notice. If petitioner proposes any other figure, the burden is on him to prove what the other figure should be. *United States* v. *Drescher* (C. A. 2, 1950), 179 F. 2d 863. In this respect petitioner has done nothing except to obtain respondent's acquiescence in establishing the alternative figures quoted above. We have not been shown why either should be used. Petitioner, of course, has not contended that the first alternative is proper, presumably because it is higher than the amount asked by respondent. We discard the second alternative, the present value on January 1, 1943, of the policy, computed on actuarial tables because the policy had no cash surrender or present value on that date by its terms, either to petitioner or his employer. Furthermore, the policy was nonassignable by petitioner and no evidence of how the petitioner could have realized anything on the policy in 1943 other than the monthly payments was produced. Cost has been considered an extremely important element by the courts in determining value in cases of this kind. *United States* v. *Drescher*, *supra*, especially Judge Clark's opinion. We think the figure contended for by respondent gives appropriate consideration to this element and with the record in the state it is we can find no reason for disturbing his concession that the amount of the employer's contribution in 1943, which petitioner should have returned for taxes in that year, was the cost to the corporation of the policy in 1941 less its recoveries thereon, or $33,895.25.

In view of the manner in which the question of value has been presented on this record it is not necessary to discuss further the problem of valuing single premium life insurance policies presented in *Guggenheim* v. *Rasquin*, 312 U. S. 254, or of annuities as presented in the *Brodie* line of cases, *supra*, including *United States* v. *Drescher*.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

RAUM, *J.*, concurs in the result.

---

ARUNDELL, *J.*, dissenting: I think that the taxation to this petitioner of the cost of the annuity contract, less the amount recovered

by the purchaser, goes beyond the permissible limit of either the general provisions of Internal Revenue Code section 22 (a) or the specific provisions of section 22 (b) (2) (B).

The respondent's determination, which is sustained by the majority opinion, was made under the broad sweep of the provisions of section 22 (a), which section includes compensation for personal services in whatever form paid. Where compensation is paid in something other than money, the measure of the amount to be taken into income is the fair market value of the property that is taken in payment. Section 29.22 (a)–3, Regulations 111. This raises a question of the fair market value of the annuity contract at the time of its receipt by the petitioner in 1943. Some cases have used the cost of replacement of the contract as the measure of value. See *Oberwinder* v. *Commissioner*, 147 F. 2d 255. That method of valuation has been used by the Supreme Court in determining the value of single premium insurance policies for gift tax purposes. *Guggenheim* v. *Rasquin*, 312 U. S. 254. In that case the Court made it clear that it took into consideration the entire bundle of rights comprehended within the policy that was the subject of the gift, which included the right of surrender for cash, the right of retention of the policy for its investment virtues, and the right to receive the face amount of the policy upon the death of the insured. I have some doubt as to whether the criterion for measuring the value of an insurance policy for gift tax purposes is necessarily the same for determining the value of an annuity contract in the hands of a recipient for the purpose of computing the amount of his taxable income. I am inclined to the view that in the latter case a better standard is the amount that could be obtained by the recipient in a willing seller-willing buyer market. Whichever is the proper method, a practical approach to the problem compels an examination into what this petitioner received in the taxable year. He received only the right to a monthly payment for as long as he lived. The contract had no investment value, no loan value, and no value dependent upon the life of another, as in the case of *Guggenheim* v. *Rasquin, supra*. In view of the restrictions against "commutation, anticipation or encumbrance" there could not be any willing seller-willing buyer market in any realistic sense. The trend of decisions in recent times has been away from the view expressed by Judge Learned Hand in *Bedell* v. *Commissioner*, 30 F. 2d 622, that "it is absurd to speak of a promise to pay a sum in the future as having a 'market value,' fair or unfair." Nevertheless, it is still a sound rule that taxation is an eminently practical matter, and under any practical view this petitioner did not receive anything which had any marketable value.

I also think that the majority opinion is contrary to the spirit of legislation dealing with the taxation of employees' annuities and to the provisions of the statute that came into effect with the Revenue Act of 1942. The respondent in this case questions whether the annuity can be regarded as an employee's annuity because of the fact that the employer was the beneficiary at the time of purchase. But certainly the findings of fact establish that the purpose of the arrangement was to provide the petitioner with an annuity after retirement from active service, and under any fair interpretation of the facts, the contract should be regarded as an employee's annuity contract.

The trend of Congressional enactments over a period of years has been to defer taxation of employee's annuities until the proceeds are received or made available to the employees. In the Revenue Act of 1942, Congress specifically provided that with respect to contracts purchased by an employer, other than pursuant to a qualified plan, only the amount contributed by the employer after the employee's rights became nonforfeitable should be included in the employee's income. Section 162, Revenue Act of 1942, which added paragraph (B) to section 22 (b) (2) of the Code. As this petitioner's employer did not make any contribution towards the purchase of the contract after the petitioner's rights became nonforfeitable, no amount should be included in the petitioner's income in excess of the amount distributed to him in the taxable year.

VAN FOSSAN, JOHNSON, and RICE, *JJ.*, agree with this dissent.

---

TURNER, *J.*, dissenting: The conclusion of the majority herein is indicated, I think, by our decision in *Renton K. Brodie*, 1 T. C. 275, but looking back, I am now persuaded that the result in that case was due to its unfortunate proximity to *Richard R. Deupree*, 1 T. C. 113. Admittedly the annuity contract here was a contract of value and when in January of 1943 petitioner was made beneficiary his prospects of enrichment were practically assured but I am still at a loss to know by what alchemy such prospective enrichment was transmuted into a present realization of income, it being specifically provided that neither the contract nor any benefits accruing thereunder could be transferred, commuted, anticipated, or in any way subjected to petitioner's debts. The petitioner was full of hopes and prospects. He was, no doubt, sated with great expectations. But he had received nothing which, presently, he could sell, trade, wear, use, eat, or drink.

> Water, water, every where,
> Nor any drop to drink.

VAN FOSSAN, *J.*, agrees with this dissent.