**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**OLMSTED INCORPORATED LIFE AGENCY, Respondent.**

**No. 16850.**

United States Court of Appeals
Eighth Circuit.

June 4, 1962.

Burt J. Abrams, Dept. of Justice, Washington, D. C., for petitioner, and Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., and Lee A. Jackson, Robert N. Anderson, Tax Div., Dept. of Justice, Washington, D. C., on the brief.

James P. Irish, Altoona, Iowa, for respondent and J. T. Haughey, Altoona, Iowa, on the brief.

Before VOGEL and RIDGE, Circuit Judges, and DEVITT, District Judge.

VOGEL, Circuit Judge.

The Commissioner of Internal Revenue, petitioner herein, seeks review and reversal of a decision by the Tax Court of the United States holding that Olmsted Incorporated Life Agency, respondent, did not realize taxable income upon the receipt by it in 1956 of a contract whereby it was to be paid monthly payments for a period of fifteen years in consideration for its surrender of all rights to future renewal commissions on previously written life insurance policies.

The facts, mainly stipulated, are not in dispute. Respondent is an Iowa corporation having its principal place of business in Des Moines, its main activity, beginning June 15, 1929, being that of exclusive general insurance agent in the State of Iowa for the Peoples Life Insurance Company of Frankfort, Indiana (hereinafter Peoples). The original agency contract between respondent and Peoples was signed on respondent's behalf by Oliver C. Miller, its president and principal stockholder who died in 1957. Two or three years prior to 1956, Peoples, because of its desire to develop insurance sales in Iowa by dividing the state into smaller territories, indicated its wish to terminate its exclusive contract with respondent. Under that contract Peoples was paying more favorable commissions to respondent than it was paying to other agencies under contracts executed subsequent to 1950. Miller did not at first accept Peoples' proposal, but subsequently, because of failing health, he did enter into a new agreement whereby the old agency agreement between respondent and Peoples was cancelled as of midnight December 31, 1955. Under the terms of the new agreement, respondent assigned to Peoples all of its rights in and to renewal commissions earned and

payable after January 1, 1956. Respondent and its three stockholders agreed not to sell life insurance contracts for any other than Peoples within the State of Iowa. Respondent agreed to turn over to Peoples all papers, documents and records pertaining to its business, and Peoples agreed to issue, payable to the order of respondent or to such person or persons as respondent might direct, an annuity or annuities calling for a total payment of $500 per month beginning February 1, 1956, for a total of 180 months. Peoples based the total amount of consideration it would pay to respondent under the new agreement upon the present value of respondent's renewal commissions that would be due after January 1, 1956. As a further consideration, Peoples agreed to pay the agents theretofore employed by the respondent such renewal commissions as might be required by their contracts with respondent.

In its 1956 corporate income tax return respondent reported $5,500, being the total of payments actually received that year pursuant to the new contract. The Commissioner determined a deficiency in the respondent's return for 1956 in the amount of $27,009.34, taking the position that the entire fair market value ($67,924.47) [1] of the new contract, whereby respondent gave up its rights to future renewal commissions and received in place thereof a fixed income over a period of fifteen years, should have been included in respondent's gross income for the year 1956. The Tax Court, in 35 T.C. 429, rejected the Commissioner's contention, holding that the case was ruled by James F. Oates, 18 T.C. 570, affirmed in Commissioner of Internal Revenue v. Oates, 7 Cir., 1953, 207 F.2d 711.

In seeking review, the Commissioner claims:

"The Tax Court Erred in Holding That Taxpayer's Assignment of Its Right to Future Renewal Commissions Did Not Constitute a 'Sale or Other Disposition' of Property Within the Meaning of Section 1001 (a) and (b), Internal Revenue Code of 1954."

26 U.S.C.A. § 1001(a) defines the term "gain" as meaning the "amount realized" from the "sale or other disposition of property", less the adjusted basis in the property. The Commissioner argues that respondent here has "disposed" of its rights to renewal commissions, with a basis of zero, in exchange for an annuity contract, with an undisputed fair market value of $67,924.47, and that this amount was taxable in the year the transaction was completed.

The Commissioner relies on Bueltermann v. United States, 8 Cir., 1946, 155 F.2d 597, and Herbert's Estate v. Commissioner, 3 Cir., 1943, 139 F.2d 756, certiorari denied 322 U.S. 752, 64 S.Ct. 1263, 88 L.Ed. 1582, as support for his contention that there was a "sale or other disposition" within the meaning of Section 1001, supra. However, it should be noted that in both of the cases cited there was a transfer of property involved. In Bueltermann, a lease required the lessee to erect a building. The lessor died and devised the rights and land to the taxpayer. The lessee breached the contract, and the taxpayer, in accordance with provisions therein, took over the land including the building that the lessee had erected thereon. It was stated there that the phrase "sale or other disposition of property" was sufficiently broad to include such transaction within the meaning of 26 U.S.C.A. §§ 22(f) and 111(a), Internal Revenue Code of 1939, the predecessors to the statute involved herein. However, the factual situation there involved has no applicability here.

In Herbert's Estate, where the decedent had a claim for $531,817.75, though the fair market value of said claim at the time of decedent's demise was $200,191.90, and where recovery on the claim

---

1. This is the figure used by the Commissioner in arriving at the deficiency assessment. The larger figure ($70,153) referred to by the Tax Court in its opinion, post, is conceded by the Commissioner to be erroneous.

to the extent of $295,803.61 was made, it was held there was a gain of some $95,000. In that case, the court said the issue was whether there was "a disposition" under Section 1001 where one receives payment for a claim he has against another. The court answered in the affirmative. However, there the money was received. That is not the situation before us. Payment here (other than the $5,500 received in 1956 and included in respondent's report) is absent. All that has occurred is the exchange of one contract for another, the principal change therein being the rate of payment.

The Commissioner next relies upon this court's decision in Ruth Iron Co. v. Commissioner, 8 Cir., 1928, 26 F.2d 30, to substantiate his position that there was a sale or other disposition. In that case, taxpayer leased mineral rights to a third party at 35¢ royalty per ton of ore. In 1913 there was a sale of the property from taxpayer to the lessee at a price determined by multiplying the estimated number of tons of ore by 35¢, deducting therefrom royalties that had already been paid. Payments were to be made over a period of 41 years. The only question involved was whether any part of the payments that were made constituted gain. This turned upon whether the notes, at the time they were redeemed in 1919, 1920 and 1921, were worth more in value than they had been at the time of the 1913 transaction. The court said they were and, therefore, a portion of the payments made were held to constitute taxable gain. But, it is not without significance to note that the *only* taxes claimed were upon *money that had been received* by the taxpayer. There was no attempt to tax for the entire 41 years— the position the Commissioner is taking here. If anything, the Ruth case supports the respondent's contention that it is liable for taxes only on the amount of money it receives each year. The Commissioner has cited Ruth only for

the proposition that there was a "sale or other disposition". In that case there was. A mine was exchanged for notes which enhanced in value as they approached maturity dates. The case is not controlling here.

Guaranty Trust Co. of New York, Executor v. Commissioner, 1929, 15 B. T.A. 20, which relies upon Ruth, can similarly be disposed of. Therein the taxpayer had exchanged his interests in leaseholds for a $100,000 a year annuity which would continue so long as he lived. In that case the only taxes considered were on annuity payments that had *already* been made. Obviously, in that the payments were for an uncertain period, that is all that could be determined. The case is not supportive of the Commissioner's position here.

Inasmuch as the Tax Court held this case to be controlled by Oates, supra, and the Commissioner seeks to distinguish that case,[2] detailed consideration is indicated to determine its applicability.

In Oates, the taxpayers were general insurance agents who, at retirement, amended their agency agreement with the insurance company by providing that future renewal commissions should be paid to them in specified equal monthly amounts over a fifteen-year period irrespective of when and in what amounts the renewal commissions would have become due and payable under the original agency contract. The obvious reason was that under the taxpayers' old contracts, the bulk of their renewal commissions would be collected by them in the first years after retirement and toward the end of the ninth year collections would dwindle off to little or nothing. Thereafter, and in accordance with the election given by the amended contract, the taxpayers elected to receive their payments in equal amounts over a fifteen-year period with a provision for a lump sum final payment if anything remained in the agents' renewal commission account. The Commissioner determined

---

2. We are advised that on February 1, 1960, the Commissioner withdrew his 1952 non-acquiescence in this decision and substituted his acquiescence therefor.

that the taxpayers there were taxable on the renewal commissions as they accrued under the terms of the original agency contract prior to its amendment. In rejecting the Commissioner's contention, the Tax Court in 18 T.C. 570 said that the taxpayers

"* * * under their amended contracts which were signed prior to their retirement * * * were not entitled to receive any more than they did in fact receive and that being on the cash basis they can only be taxed on these amounts [actually received] and that the remainder will be taxed to them if and when received by them." 18 T.C. at 585.

By unanimous decision, the Seventh Circuit, in Commissioner of Internal Revenue v. Oates, supra, 1953, 207 F.2d 711, affirmed the Tax Court. In doing so, that court said that the amended contract was a novation, that the old contract was extinguished, and that the taxpayer had no right to demand any additional compensation other than that which was listed in the new contract. Then after discussing Massachusetts Mutual Life Ins. Co. v. United States, 1933, 288 U.S. 269, 53 S.Ct. 337, 77 L.Ed. 739, as support for its affirmance of the Tax Court, Judge Lindley, referring to cases relied upon by the Commissioner wherein each taxpayer had "effectually received the accrued income with which he was charged", said at pages 713–714 of 207 F.2d:

"This case is far removed from such decisions. Here the parties were confronted by a situation where inconvenience and resulting dissatisfaction came to the retired agents by reason of the constantly decreasing payments made by the company under the original contract. To relieve the situation, the company and the taxpayer, after full and complete negotiations, before retirement of the agent, agreed to abrogate and annul the old contract, to substitute a new one and thus to improve the unsatisfactory posture of affairs. *The taxpayer did not re-*

*duce to his immediate possession or to his present enjoyment anything that might thereafter accrue to him. He made no assignment; he took no dominion over the accrued commissions other than to agree to receive them in cash installments as they matured under the contract. He did nothing to charge himself with the economic benefit to be derived from the accruing commissions but, on the contrary, let them accumulate under an agreement whereby the company was to pay the same amount every month rather than constantly decreasing amounts.*" (Emphasis supplied.)

We think the Tax Court shows sound basis for its reliance on Oates, convincingly pointing out its applicability here. Just as cogently has the Tax Court pointed out the insignificance of the distinguishing factors the Commissioner considers to be of importance. It said at pages 434–437 of 35 T.C.:

"Respondent seeks to distinguish the Oates case by arguing that in that case the contract was not transferable and the rights thereunder nonassignable, while here the petitioner's rights to the periodic payments were assignable. We cannot conceive what difference in principle this would make. Also in the Oates case the rights and interests under the contract were subject to assignment with the written consent of the insurance company, and a careful examination of the amendment to the general agent's contract indicates quite clearly that the periodic payments to the taxpayers were 'subject to the rights of any assignee.'

"Respondent also makes much of the testimony that Peoples was ready in December 1955 to pay the commuted value of the renewal commissions to petitioner in a lump-sum payment. The executive officer of Peoples testified that 'We told him he could have it either way but we decided upon the annuity. We knew

that Mr. Miller wanted to prolong his income.' It would seem from this that Peoples decided upon the annuity. However, even if the choice were up to petitioner, it is clear that he had no *right* to demand cash as of December 1955. Nothing was due and payable at that time. The parties were simply bargaining for a suitable agreement and it is this agreement, which was bona fide and legally binding, that determined the rights of petitioner in 1956.

"Respondent seeks to distinguish the Oates case in that there the agency agreement was only amended while here it was extinguished and a new contract executed. Also in the Oates case the contract amendment merely bound the insurance company to pay the agents their renewal commissions (over 15 instead of 9 years) while here the new contract extinguished petitioner's old contract and gave the agent an annuity for 15 years.

"The contract amendment in the Oates case was virtually a new contract. We called it that in our opinion. In the affirming opinion in Commissioner [of Internal Revenue] v. Oates, supra, the court stated: 'The amended contract was in the nature of a novation, that is, a substitution of a new agreement or obligation for an old one which was thereby extinguished.'

\* \* \* \* \* \*

"The fact that here the new contract was an annuity and in the Oates case it was not, points up no difference that would warrant different tax treatment. In both, the deferred payments were computed to return to the agents their future renewal commissions. The only difference is that in the Oates case the company set up a renewal commission account for the agents on its books and made disbursements to the agents from these accounts. Here the company received the full renewal premiums without deduction for commissions and paid the agent what would be his commissions from its general funds. It is of passing interest to note the insurance official here testified Peoples actually did set up a ledger account of petitioner's renewals 'just to see how we would come out on this thing' and he added 'so far we are all right.'

"Respondent's whole argument here is that in 1956 petitioner made a 'sale or other disposition' of its right to renewals within the meaning of section 1001(b), I.R.C.1954, and received in exchange therefor an annuity contract of the then value of $76,153 [3] and consequently the latter sum is income to petitioner in 1956 and taxable as ordinary income.

"We think the reality of the transaction should govern. The agent here was in the same situation as were the agents in the Oates case. In both cases the agents were retiring and they had agency contracts that would entitle them to future renewal commissions. The exact amounts they would receive could not be foreseen because of deaths, surrender, and lapses of policies. But insurance companies are fond of acting upon what, in insurance language, is called 'experience.' In both cases the new contracts were designed to return to the agents the full amount of their future renewals, after allowance for deaths, surrender, or lapses of policies. In the Oates case experience tables were used to compute the payments but the new contract took a form that would, over the 15 years, insure the payment of the amount of the agent's renewal commissions with deductions for deaths, surrender, and lapses of policies. Here there was

3. See note 1, supra.

prior computation of the insurance that would be expected to renew, from recognized insurance tables, and the new contract took the form of returning to the agent the full amount of renewal premiums after prior allowance for what recognized tables showed would be the deaths, surrender, and lapse of policies. We see nothing but a difference in form in the two transactions. In both instances the agents entered into new contracts at a time when there was nothing due and payable to them under their agency contracts, and the new contracts merely continued the insurance company's obligations under the old contracts.

\* \* \* \* \*

"What was said in Motor Products Corporation, supra, [1942, 47 B.T.A. 983, affirmed 6 Cir., 1944, 142 F.2d 449] can be said here. The insurance company's obligation to pay petitioner his future renewal commissions was the obligation of the old contract. When this was canceled and the new contract executed the insurance company had substantially the same obligation to pay the same party the same amounts of the agent's commissions on future renewals. The only change here was the change in payment dates which, as held in the cited cases, is immaterial on the issue we are considering.

"We hold there is no significant difference in the facts between this case and the Oates case and the same rule applies, to wit: The periodic payments are taxable to petitioner as ordinary income under the annuity contract when and if received. There was no 'sale or other disposition' of the agent's right to renewals under the agency contract within the meaning of section 1001(b), I. R.C.1954, and petitioner realized no gain taxable under said statute."

We agree with the Tax Court in its conclusion that there was no "sale or other disposition" within the meaning of Section 1001, and that the new contract merely provided for a different rate or manner of payment whereby the insurance company could discharge its liability under its agency contract.

■ The Commissioner's alternative argument here is that even if there is found to be no sale or other disposition within the meaning of Section 1001, this is an annuity contract and that to the extent of its fair market value, such contract constituted gross income to the respondent under the provisions of Section 61. In support of his argument, the Commissioner cites Oberwinder v. Commissioner, 1945, 147 F.2d 255, a case from the Eighth Circuit, as controlling. He also lists United States v. Drescher, 2 Cir., 1950, 179 F.2d 863, certiorari denied 340 U.S. 821, 71 S.Ct. 53, 60, 95 L. Ed. 603; Hackett v. Commissioner, 1 Cir., 1946, 159 F.2d 121; Hubbell v. Commissioner, 6 Cir., 1945, 150 F.2d 516, 161 A.L.R. 764; Percy S. Lyon, 1954, 23 T.C. 187; and Renton K. Brodie, 1942, 1 T.C. 275, as clearly establishing "that receipt of a valuable commercial annuity contract in lieu of compensation (or in lieu of renewal commissions, as in the case at bar) is the equivalent of cash for tax purposes and constitutes taxable income in the year of receipt, to the extent of the fair market value thereof." However, analysis of those cases points up that the court, in each, relied upon a factor absent herein—in each of those cases an employer had paid out, and deducted for that year, money to an insurance company for an annuity for the employees as added compensation. The courts there held that the amount paid out in that year was for the benefit of the employee, and therefore the employee was taxable to that extent, though he had not yet received any payment under the annuity. In the case before us, there is, of course, no payment made by Peoples, no deduction claimed by Peoples, no intended compensation from Peoples to the taxpayers for employment other than what had already been earned. There is, on the other hand, consideration running both ways in that Peoples obtained a

cancellation of the exclusive territorial contract held by respondent, as well as respondent's promise to sell for no one but Peoples in the State of Iowa, and respondent received the new contract with its payments distributed evenly over a fifteen-year period. All that was intended here, as found by the Tax Court, was to substitute one contract for another—in other words, a novation. At no time was respondent in a position to *demand* more than the stipulated monthly payments. It did not reduce future payments to possession. It did not assign the contract. It did nothing to indicate it had assumed dominion over the installments to be made in the future.

We hold with the Tax Court that this cash basis taxpayer is to be taxed only on the payments as it receives them in accordance with the new agreement.

Affirmed.