### DANIEL DENNIS AND EDNA V. DENNIS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5294–66.   Filed October 10, 1968.

*Lee M. Galloway*, for the petitioners.
*Robert M. Zimmerman*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined a deficiency in petitioners' 1964 income tax of $3,600.50.

The sole question presented here is whether a $15,000 alimony payment by petitioner was actually made in and is properly deductible by him in 1964.

#### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation and the exhibits attached thereto are incorporated herein by this reference.

Daniel Dennis (hereinafter referred to as petitioner) and Edna V. Dennis (hereinafter referred to as Edna) are husband and wife, and were residents of Douglas City, Calif., at the time they filed their petition herein. They filed a joint Federal individual income tax return with the district director of internal revenue, San Francisco, Calif., for the taxable year 1964.

Petitioner was married to Gladys H. Dennis (hereinafter referred to as Gladys) in 1920 and a final decree of divorce dissolved this mar-

riage in 1955. On September 14, 1964, Gladys filed suit against petitioner for unpaid alimony. Petitioner engaged Philip C. Wilkins (hereinafter referred to as Wilkins), an attorney, to represent him. Wilkins advised petitioner that if the matter went to trial Gladys would probably obtain a judgment for the full amount of unpaid alimony of $16,050. While petitioner was on very bad terms with Gladys and did not "want to pay her a dime," Edna, who was married to petitioner at this time, wanted the matter settled so it would not be a cloud over their marriage. Petitioner authorized Wilkins to negotiate a settlement with Gladys' attorney.

As a result of negotiations, $15,000 was agreed upon to be paid to Gladys by petitioner in full settlement of all claims she had for unpaid alimony, and for all future claims "until the end of the world."

Gladys did not like or trust petitioner, but did like and trust Wilkins, his attorney. Thus, she requested that the $15,000 be deposited in the clients trust account of Wilkins' law firm for her benefit. Accordingly, on December 4, 1964, petitioner drew a check for $15,000 to Philip C. Wilkins. This check was deposited in Wilkins' clients account and was paid by petitioner's bank December 10, 1964. It was understood by petitioner and his attorney, and by Gladys and her attorney, that this money was beyond petitioner's unilateral recall. While $15,000 was informally agreed upon in 1964, and while Gladys wanted the money deposited for her benefit in Wilkins' clients account in 1964 so that petitioner could not back out of the proposed settlement, she did not want a final settlement reached until 1965 for tax reasons. She was entitled to this money at any time she executed a dismissal of her action with prejudice and a formal release, but not before. She did neither until January 1965, when the money was actually paid over to her.

Petitioner claimed the $15,000 alimony deduction on his 1964 return. The Commissioner disallowed the deduction "as the amount was not paid during the taxable year ended December 31, 1964."

OPINION

We must decide whether the $15,000 alimony payment was made by petitioner during the taxable year 1964, as stated on his return.

Section 215(a), I.R.C. 1954,[1] provides there shall be allowed as a deduction by the husband amounts includable under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. There is no dispute that the $15,000 alimony payment involved here is includable under section 71 in the gross income of petitioner's wife, or that he is entitled to a deduction in some year. The question is whether he is entitled to the deduction in 1964.

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.

The parties to this suit are in agreement that payment of alimony must be made within the husband's taxable year before it can be deducted by him in that year. The parties are in agreement also that the time payment is considered made for the purposes of section 215 is the time when it was received by the wife (Gladys), either actually or constructively. The petitioner argues that his payment of $15,000 to his attorney for deposit in his clients trust account for the benefit of Gladys constituted a constructive receipt of this money by Gladys in 1964. The Commissioner agrees that the decision in this case depends upon a proper application of the doctrine of constructive receipt.

Section 1.451–2(a), Income Tax Regs., codifies the judicially established principles of the constructive-receipt doctrine:

Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * *

The $15,000 was available to Gladys in 1964. Her control of its receipt, however, was subject to the limitation that she first execute a dismissal of her suit with prejudice and a release of all claims against petitioner "until the end of the world."

If this limitation was of real substance, there was no constructive receipt by Gladys in 1964. Petitioner argues that the limitation on Gladys' control was akin to a sham; that it was self-imposed, and consisted of a mere formality which lacked substance.

Petitioner argues that Gladys could always opt for at least $15,000 in 1964, and that until she repudiated the agreement, the money was as good as hers. Petitioner also argues that Gladys never had any intention of repudiating the agreement, but merely refused to bind herself legally to the terms of the proposed settlement until January 1965, in order to avoid tax on the $15,000 in 1964.

Taxpayers may conduct their business so as to minimize their taxes, provided only that the arrangements are real, not sham arrangements, and are legally effective to accomplish the desired result. In determining whether the means used are or are not effective the fact that tax reduction is a moving cause in the choice is not a material factor.

The means adopted here had the legal consequence that no settlement was made and no rights were determined as between Gladys and petitioner until 1965, when Gladys executed the releases. Petitioner practically concedes in his brief that if Gladys repudiated the proposed settlement, the money would go back to him, and Gladys would be free to prosecute her claim against petitioner in the courts. In other words, the settlement was still open until Gladys executed the releases. This

we believe to be the determinative factor, not that petitioner had temporarily lost control of the money. The execution of the formal releases was a transaction of real substance. It was the act of their execution in 1965 which legally fixed the rights as between Gladys and petitioner in the $15,000. Until then Gladys did not receive the money, actually or constructively because her receipt thereof was contingent upon her giving up something of value, i.e., releasing the claims she had against petitioner.

In holding there was no constructive receipt in 1964, we follow *Richards' Estate* v. *Commissioner*, 150 F. 2d 837 (C.A. 2, 1945), which reversed a Memorandum Opinion of this Court on facts substantially similar to the facts here.

Because we hold there was no receipt by Gladys in 1964, it follows petitioner did not make "payment" in 1964 within the meaning of section 215, and is not entitled to the $15,000 deduction in that year.

Reviewed by the Court.

*Decision will be entered for the Commissioner.*